CATHERINE E. LAKE *et al vs.* MARY F. WEAVER, Executrix.

PROVIDENCE—APRIL 21, 1897.

PRESENT: Matteson, C. J., Stiness and Tillinghast, JJ.

Although the record may show that the evidence submitted to the jury was quite conflicting, the verdict will not be set aside if there be in the record sufficient evidence to sustain the finding.

To show what income the deceased had derived from his business, his son, who succeeded to the business immediately on the death of his father, was asked in cross-examination as to the amount of *his* business, for purpose of comparison :—

*Held,* that the testimony was too remote and uncertain.

To sustain a petition for a new trial on the ground that the witnesses while on the stand were prompted in giving their testimony by signals and other devices from certain of the parties, it must appear that the attention of the presiding justice at the trial before the jury was called to this misconduct and that he neglected to correct it.

It is clearly within the discretion of the trial court whether, after the evidence is closed and the arguments of counsel begun, the case should be reopened to admit further testimony, and especially so when such testimony is merely cumulative.

PETITION for a new trial of a probate appeal.

PER CURIAM. We have examined the voluminous record of the evidence submitted to the jury in this case, and while it appears that the evidence is quite conflicting, yet we cannot say that it is not sufficient to sustain the verdict.

It is not strange, especially in will cases, where family differences play an important part and strong passions are excited, that the testimony should be conflicting and more or less of a partisan character. It is noticeable, also, that persons called as experts, touching the mental capacity of a testator, in such cases, are usually far from being in accord in relation to this question ; and the evidence shows them to have been so in this case. The question as to the testamentary capacity of the deceased, therefore, was peculiarly one for the determination of the jury. The case was tried at great length, and with that high degree of diligence and thoroughness which are well known characteristics of the counsel, both for the proponents and also for the contestants ;

the jury evidently had every possible means of becoming acquainted with the mental condition of the testator, practically his whole life for many years next before his death having been placed before them in review ; they saw and heard the witnesses and were in the best possible position to form an intelligent judgment as to their credibility, and also as to the question at issue.  They have found that the instrument in question is not the will and testament of Albert Weaver, deceased, and there is evidence sufficient to sustain this finding.

The petitioners allege that the court erred in ruling out certain questions in cross-examination of Charles H. Weaver, to show a comparison between the income of said Charles, who was a son of the deceased, and that of his father, in the teaming business, particularly that part of it known as the string-team business.  It appeared from the testimony of said Charles, a witness produced by the contestants, that the deceased had long been in the teaming business ; that said witness had been in his employ in one branch of that business for many years, and up to the date of his father's death ; that it was a very profitable business, and that witness knew in a general way the amount of income derived therefrom by his father, although he had nothing to do with the financial part thereof or with the keeping of the books.  It also appeared that said Charles succeeded to his father's business upon the death of the latter.

In view of the fact that proponents had denied that the profits of the business were anything like the estimate put thereon by Charles, and had offered testimony that little or no profit was realized therefrom for several years before the death of the testator, the witness was asked in cross-examination as to the amount of *his* business, and whether he did not do more than his father, for the purpose of making a comparison between their respective incomes.  The question was objected to, ruled out, and an exception taken.  Counsel contends that the question was pertinent, as the comparison asked for would have shown that the testimony of the witness was either true or false.  He also contends that the

question should have been allowed for the purpose of impeaching the testimony of the witness, if for no other purpose. We think the evidence offered was both too remote and too uncertain to have any material bearing upon the case. The witness had testified that he had materially reduced his prices for teaming since the death of his father, and that he had not carried on the same identical business that his father had carried on ; and it also appeared, for other reasons, that the comparison called for could not have thrown any light upon the question at issue. Nor do we see, in the circumstances which appeared in his testimony taken as a whole, that any comparison which he could have made would have tended in any appreciable degree to impeach his testimony. The exception is therefore overruled.

The petitioners allege that they did not have a fair and impartial trial, in that certain witnesses, called by the contestants, were prompted while on the witness stand in the giving of their testimony, by signals and other devices from certain of the contestants, and particularly from Mrs. Lake and Mrs. Coria. In order to constitute any misconduct of this sort a ground for new trial it must appear that it was called to the attention of the presiding justice at the trial before the jury, and that he neglected to correct it. In this case the record shows that the objectionable conduct was repeatedly called to the attention of the presiding justice, that he warned the parties through their counsel to desist, and finally threatened to publicly reprimand them if their misconduct continued. In these circumstances, it cannot be fairly inferred that such misconduct was prejudicial to the rights of the proponents, and hence there is no legitimate ground for complaint on account thereof.

Petitioners also allege that they did not have a fair and impartial trial, in that Emily H. Lucas, one of the contestants, testified in rebuttal to the effect that she was blind, and was being treated therefor in a New York hospital, which testimony was corroborated by other witnesses ; that this testimony was adduced at so late a period in the trial that petitioners did not have sufficient time and opportunity to

fully contradict the same ; and that, during the arguments of counsel, petitioners offered in evidence certain letters, then just discovered, written by said Emily while in New York, for the purpose of showing that she was not blind, but the court declined to permit them to be submitted in evidence on the ground that it was too late. The record does not show that any exception was taken to this ruling, and hence it cannot properly be urged as a ground for new trial. But, even if it had been duly excepted to, we do not think it was of sufficient importance to be a ground for new trial. Moreover, it was clearly within the discretion of the trial court whether, after the evidence had been closed and the arguments of counsel had begun, the case should be reopened to admit further testimony, and more especially when such testimony was merely cumulative in its character.

The petition is therefore denied, and the case remitted to the Common Pleas Division with direction to enter judgment on the verdict.

*Albert A. Baker*, for appellant.

